777 So.2d 1209 (2001)
M.M., the father of A.B., a child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D00-1804.
District Court of Appeal of Florida, Fifth District.
February 23, 2001.
*1210 Mark Reyes, of Howard & Reyes, Chartered, Sanford, for Appellant.
James A. Sawyer, Jr., Orlando, for Appellee.
GRIFFIN, J.
M.M., the father of A.B., appeals an order of disposition in a dependency action placing his infant daughter, A.B., with her maternal aunt. We reverse.
A.B. was born to S.B. and M.M. on November 28, 1999. The parents were never married, although they had lived together. They were separated by the time of the baby's birth. The mother has an extensive psychiatric history.
The Department of Children and Families ["DCF"] filed a petition for dependency against both the mother and father on December 10, 1999. An amended petition was filed on December 16, 1999, alleging that the mother was unable to properly care for or supervise the child, and had allowed the child to exist in an environment that caused, or was likely to cause, the child's physical, mental or emotional health to be in danger of being significantly impaired. The petition asked A.B. to be declared dependent as to the father because he had failed to care for the child and protect her from her mother. The petition recommended that the child be placed with the maternal aunt who had taken her in.
The father was served with a copy of the petition on January 5, 2000. On January 18, 2000, he filed a motion asking for paternity testing of the child. In defense of the petition, he responded that he had been unable to monitor and control the mother during her pregnancy due to the "actual violence and continuing threats of violence by the natural mother" against the father, his employees, and associates.
When paternity testing revealed that M.M. was A.B.'s father within a probability of 99.84%, the father immediately filed a motion asking for A.B. to be placed in his custody. That same day, the mother consented to an adjudication of dependency.
The case was set for hearing on April 20, 2000. On that date, DCF dismissed the father from the petition. The court considered the father's motion to change placement, but reserved ruling on the motion until a home study of the father could be completed. The father was granted supervised visitation.
The father filed a modified petition on May 11, 2000, in which he sought sole parental custody of A.B. and an injunction against the mother. The motion alleged that the father should be granted "sole custody" of the child because: (1) the mother suffers from mental illness, has attempted to kill the father, has threatened to kill herself and her unborn child, and was Baker Acted on several occasions; (2) the mother has consistently refused to take her medication; (3) the mother continues to use alcoholic beverages, in violation of her case plan; (4) the mother had left her daughter unsupervised; (5) the mother had threatened to take the child back to Czechoslovakia; and (7) the father is well able to care for the child, both emotionally and financially. Specifically, the father alleged that the mother had previously threatened to kill the father, herself and her unborn child with various knives; she had been stalking the father and his new fiancee; and she had threatened the fiancee's safety as recently as *1211 March 2000. The father sought an order precluding the mother from having any contact with A.B., as well as an order prohibiting the mother from having any contact with the father, his fiancee, and their friends and associates.
Prior to the disposition hearing, the mother underwent a psychological evaluation. The examiner concluded that the mother suffered from a "depressive order which may mask a more serious schizoaffective disorder." He felt that she was not ready to assume full custody of her daughter, but felt that she should be given incremental opportunities to assume a role in raising her baby, provided she remains compliant and consistent with her treatment.
A positive home study was conducted of the father's residence. It indicated that the father owns a three bedroom home in a quiet residential neighborhood and it is in excellent condition. The home has a room which the father has furnished as a nursery. However, the homestudy noted that the father wants to raise his daughter "independently from the mother." The study recommended that A.B. continue her current placement with her maternal aunt for at least three more months.
Ultimately, on June 12, 2000, the court conducted a hearing on the father's custody motion. At the hearing, the mother's attorney argued that she had substantially complied with her case plan and should be given custody of A.B. The father claimed that he had a witness who had seen the mother intoxicated on at least ten occasions, in violation of her case plan. DCF said it was not yet ready to agree to placement with the mother, stating this was something that would not happen "overnight." The guardian expressed her concern that placing the child with the father would result in less frequent contact with the mother. The father urged that he was entitled to preference under the statute, but also agreed to abide by the court's ruling concerning the child's contact with her mother. The aunt who has custody told the court that the mother had been exercising her visitation and that they did not feel that she would harm the child. She also told the court that the father had not been paying any support. The father's counsel said that this was because he had been paying a child care center to reserve a place for A.B.
At the conclusion of the hearing, the court decided to leave the child in her current placement, explaining "I don't think it's in the best interest of the child to be placed in a day care center at such a tender age." The father objected that the court had used an "improper standard." The court responded:
Well, I find it's in the best interest of the child based on the tender age of the child that the father should have contact, the mother should have contact, reunification is still the goal, and in light of that I respectfully receive your objection.
The court's ruling was repeated in a written disposition order. The father was also ordered to pay $546 in child support to the aunt.
The father is correct that he was entitled to placement preference under section 39.508(8), Florida Statutes (1999):[1]
(8) When any child is adjudicated by a court to be dependent, and the court finds that removal of the child from the custody of a parent or legal custodian is necessary, the court shall first determine whether there is a parent with whom the child was not residing at the time the events or conditions arose that brought the child within the jurisdiction of the court who desires to assume custody of the child and, if such parent requests custody, the court shall place the child with that parent unless if finds that such placement would endanger the safety, well-being, or physical, mental, or emotional health of the child. Any *1212 party with knowledge of the facts may present to the court evidence regarding whether the placement will endanger the safety, well-being, or physical, mental, or emotional health of the child. If the court places the child with such parent, it may do either of the following:
(a) Order that the parent assume sole custodial responsibilities for the child. The court may also provide for reasonable visitation by the noncustodial parent. The court may then terminate its jurisdiction over the child. The custody order shall continue unless modified by a subsequent order of the circuit court hearing dependency matters. The order of the circuit court hearing dependency matters shall be filed in any dissolution or other custody action or proceeding between the parents and shall take precedence over other custody and visitation orders entered in those actions.
(b) Order that the parent assume custody subject to the jurisdiction of the circuit court hearing dependency matters. The court may order that reunification services be provided to the parent from whom the child has been removed, that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court jurisdiction, or that services be provided to both parents, in which case the court shall determine at every review hearing which parent, if either, shall have custody of the child. The standard for changing custody of the child from one parent to another or to a relative or another adult approved by the court shall be the best interest of the child.
Id. (emphasis added).
This statute requires the court to place a child adjudicated to be dependent as to one parent with the child's remaining (non-residential) parent upon request, unless the court "finds that such placement would endanger the safety, well-being, or physical, mental, or emotional health of the child." § 39.508(8), Fla. Stat. (1999). The decision is not optional with the courtthe statute says the court "shall" make such a placement. See In re M.K.S., 726 So.2d 309 (Fla. 2d DCA 1998).
In Roberts v. Florida Department of Children and Families, 687 So.2d 51 (Fla. 3d DCA 1997), a six-year-old child had been adjudicated dependent as to his mother. At the time, the natural father was in prison. Upon the father's release, he sought a writ of habeas corpus to obtain custody of the child from DCF, which had placed the child with a relative. The father relied on section 39.41(1), Florida Statutes (1995), which was identical to section 39 .508(8) in all material respects. On appeal, the Third District Court found that the father, who had been dismissed from the dependency proceeding, was entitled to custody of his son. The court explained:
Because there was no evidence, let alone the indispensable finding that the placement "would endanger the safety and well-being of the child," the mandatory terms of section 39.41(1), Florida Statutes (1995) require that he be given custody. Contrary to the department's position here, the statute does not permit an independent judicial consideration of the "best interests" of the child. See C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA 1996), review denied, 680 So.2d 424 (Fla.1996)(courts lack authority to deviate from statutory requirements as to placement of dependent child); see also In re Guardianship of D.A. McW, 460 So.2d 368 (Fla.1984); Murphy v. Markham-Crawford, 665 So.2d 1093 (Fla. 1st DCA 1995), review denied, 675 So.2d 928 (Fla.1996). Compare § 61.13(2)(b)(1), Fla. Stat. (1995) ("[t]he court shall determine all matters relating to custody of each minor child of the parties in accordance with the best interests of the child"); Rumph v. V.D., 667 So.2d 998, 999 (Fla. 3d DCA 1996)(Schwartz, C.J., specially concurring)(applying § 39.41(4)(b) which provides that placement of child need not be changed "if it is in the child's best interest to remain in the current placement," noting that *1213 there was no "clear and binding statutory or common law basis for choiceas would be the case, for example, if one of the contestants were the child's natural parent"). Rather, section 39.41(1) represents a determination that, in the present circumstances, the interests of society, for which the legislature speaks, are best served by placing the child with his parent. We are bound by that decision.
Id. at 51-52.
In this case, there is no evidence that placing A.B. with her father "would endanger the safety, well-being, or physical, mental, or emotional health of the child." § 39.508(8), Fla. Stat. (1999). On appeal, DCF is reduced to arguing that the father isn't really a "father" because he demanded testing to establish paternity before seeking custody and because he did not support the mother. These arguments are both without weight and without evidentiary support. In this regard, we note that DCF dismissed the dependency proceeding against the father. We accordingly reverse and remand to the lower court with instructions to place the child with her father.
REVERSED and REMANDED.
COBB and ORFINGER, R.B., JJ., concur.
NOTES
[1] This renumbered statute is presently section 37.521(3)(b), Florida Statutes (2000).