FULMER, Chief Judge.
T.W., the Father of K.M.,[1] challenges the trial court’s order that granted long-term custody of K.M. to the maternal grandmother and terminated protective services supervision in the dependency proceeding underlying this appeal. In this opinion we address two issues. First, on a procedural matter, we explain our earlier denial of a Motion for Order Directing Appellant to File a Petition for Writ of Certiorari filed by the Guardian ad Litem (GAL).[2] Second, on the substantive issue raised by the Father in his appellate brief, we reverse for the trial court to reconsider its placement decision in accordance with the requirements of section 39.521(3)(b), Florida Statutes (2005), which governs placement determinations when there is a nonoffending parent who desires to assume custody of the child.
After the Father filed his notice of appeal, the GAL responded with a motion to direct the Father to file a petition for writ of certiorari, in which the GAL argued that the order on appeal is nonfinal and nonappealable because the trial court has continuing jurisdiction and can modify its orders at any time in the children’s best interests. Accordingly, the GAL maintains that the order can be reviewed only by a petition for writ of certiorari. We denied the motion by previous unpublished *1216 order, indicating that an opinion would follow. We explain our order here.
It is the intent of the Florida Legislature to achieve permanency for every child in the dependency system. § 39.001(l)(h). When it is determined that reunification with either parent is inappropriate, the court must make a permanency determination for the child. § 39.621(1). When reunification is not an option, adoption is the preferred permanency option. § 39.621(2). However, if adoption is not in the child’s best interests, the court may consider other permanency options, such as guardianship pursuant to chapter 744, Florida Statutes, long-term custody, long-term licensed custody, and independent living. § 39.621(3).
Section 39.622 permits permanency through long-term custody with an adult relative or other adult approved by the court. Long-term custody is approved when the parents have either consented to long-term custody, had parental rights terminated, or failed to substantially comply with a case plan and the court determines at a judicial review hearing that reunification is not in the child’s best interests. § 39.622. Long-term custody is considered permanent when the court relieves the Department of Children and Families of the responsibility for supervising the placement and the court discontinues judicial review hearings. § 39.622(9). However, the trial court retains jurisdiction and may modify the order terminating supervision of the long-term placement if it is found to be in the best interests of the child. Id.
In this case, the order on appeal approved permanency review, granted long-term relative placement, and terminated protective services supervision. The trial court determined that further judicial reviews were no longer necessary. Therefore, permanency was achieved. The permanency placement is intended to continue until the child reaches the age of majority and is not to be disturbed absent a finding that the circumstances of the permanent placement are no longer in the best interests of the child. § 39.621(3). Although dependency and termination proceedings do not conclude with a single final order, the court’s action in achieving permanency closed this dependency ease unless and until the court finds long-term placement is no longer in the children’s best interests and modifies the order terminating protective supervision.
Accordingly, we denied the GAL’s motion based on our conclusion that the order under review — granting long-term relative placement and terminating protective services supervision — is a final, appealable order for purposes of Florida Rules of Appellate Procedure 9.030(b)(1)(A) and 9.146.
We next address the substantive issue raised by the Father in his appellate brief. On December 27, 2004, the Department filed a dependency petition against the Mother after her two children (one of them the K.M. in whose interests the order on appeal was entered) were sheltered. The Mother consented to dependency. The dependency order, entered January 19, 2005, declared K.M. and the other child dependent as to the Mother but explicitly stated that K.M. was not adjudicated dependent as to the Father. The order determined that K.M. could not be returned to the Mother because of her mental health and substance abuse problems, nor to the Father because his whereabouts were unknown.[3] The order stated that *1217 “the case remains in a contested posture as to the [F]ather.” K.M. was placed with a maternal aunt and the maternal grandmother. A case plan was approved for the Mother, the goal being reunification. The order continued the arraignment hearing on the Father until March 28, 2005.
In late January, the Father was notified of the dependency proceeding. By letter dated February 9, 2005, the Father indicated that he wanted to raise K.M. and asked to be advised of what steps were required to begin the process. On March 28, 2005, the court conducted a judicial review hearing, at which the Father was present. In its May 6 order resulting from this judicial review, the court found the Father to be a “non-offending parent” and, based on the Father’s request for possible placement of K.M. in his home, the court ordered that an Interstate Compact on the Placement of Children (ICPC; § 409.401 et seq., Fla. Stat. (2004)) study be undertaken on the Father’s home in New York. Telephonic visitation between the Father and K.M., at the discretion of Safe Children Coalition (SCC), the Department’s contractor for services, was also ordered.
At an August 29, 2005, judicial review hearing, the trial court granted the Father visitation over the Labor Day weekend, authorized unlimited supervised visitation on certain conditions, and set a status review hearing for October 24, 2005, to consider a motion for reunification that had been filed by the Father.
On October 13, 2005, SCC filed a Status Review report indicating that, pursuant to the ICPC, a home study had been completed on the Father in New York. The results concerning the home itself were positive,[4] but information on required child abuse and neglect checks had not yet been sent to Florida. An SCC employee noted that she had heard orally from her New York counterparts that the Father had no “indicated cases” but that his live-in girlfriend did. Although the ICPC home study report from New York stated that the Father was seeking only visitation, not custody, the SCC document indicates, that the Florida caseworker had confirmed from the Father that he was seeking custody. The report concluded with a recommendation that placement of K.M. with the Father be held in abeyance until more information is available on the abuse/neglect history of the Father’s girlfriend.
A status check hearing was conducted on November 2, 2005, to address the matters raised in the October 13 Status Review report regarding the ICPC home study and the unresolved concerns raised regarding the Father’s girlfriend. The Father testified by phone that his girlfriend had moved out of his apartment a week prior to the hearing and that their relationship was now merely friendly. The court orally denied placement of the child with the Father “at this time” stating, “I want to see more time progress before I would consider placement of the child there in light of the rather convenient departure of the paramour.” In its written order of November 22, the court denied the Father’s motion for reunification “at this time without prejudice.” K.M. was to remain in the custody of the maternal grandmother and the aunt, and the Father was to have continued supervised visitation.
*1218 A permanency hearing was held on December 20, 2005. The order that resulted from this hearing is the one under review here. At the hearing, counsel for the Father requested that his visitation be changed to unsupervised status and that the case plan be extended by sixty days. Counsel stated, “The reason is [the Father] is a non-offending parent and he’s seeking to have the child with him.” Counsel further advised the court that the Father was prepared to testify regarding the court’s previous concern that the girlfriend’s move from the Father’s house may have been temporary. The Father would testify that the relationship was over. The court queried, “Wasn’t ICPC denied?” Counsel replied, ‘Tes. And we wanted the Court to extend the case plan on this case because the reunification is really with the father and he is [a] non-offending father. He has a right to have the child be with him.” The court replied, “No, he doesn’t. Not with the ICPC that’s been denied.” Counsel argued that “ICPC by statute is not required for a non-offending parent, it’s only a home study, whether or not this court accepts the home study from New York.” The court stated, “I’m denying that. Does he want to be heard concerning visitation?” Thereafter, the matter of visitation was addressed.
In its written order, the court found that the Mother did not comply with her case plan and “that the ICPC Home Study on [the Father] was not approved by the State of New York.” The court terminated protective services supervision and ordered that K.M. be placed in the long-term care and custody of the grandmother. Regarding visitation, the order provides that the grandmother “shall encourage” K.M. to speak on the telephone with her Father. The order also provides that the grandmother is “encouraged to initiate” unsupervised visits between the Father and K.M. commencing with several hours, extending to overnights and weekends, and leading to vacationing of K.M. with the Father.
Citing section 39.521(3)(b), the Father argues on appeal that the trial court abused its discretion by denying his request for placement of his child, notwithstanding a favorable home study, because no evidence was presented that “such placement would endanger the safety, well-being, or physical, mental, or emotional health” of his child.[5] We agree that the trial court abused its discretion by failing to comply with the requirements of section 39.521(3)(b).
The GAL argues that the Father was taking inconsistent positions on whether he wanted custody or mere visitation and that he did not preserve the issue of custody in the permanency hearing. However, the court’s November 22, 2005, order denied a motion for reunification filed by the Father, and although at the permanency hearing the Father’s counsel did not use the words “reunification” or “custody,” the context indicates that he was still working toward custody. Counsel reminded the court of its earlier concern that the breakup with the girlfriend was temporary but assured the court that the Father could testify that the relationship with the girlfriend was over. As noted above, counsel asked for a sixty-day extension of the case plan because “[the Father] is a non-offending parent and he’s seeking to have the child with him” (emphasis added). We *1219 conclude that counsel’s statements sufficiently raised and preserved the issue of custody, which we now address.
Parental rights constitute a “fundamental liberty interest,” Padgett v. Dep’t of Health & Rehab. Servs., 577 So.2d 565, 571 (Fla.1991), protected by the Due Process Clause of the Fourteenth Amendment, Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). Section 39.521(3)(b) effectuates these rights by requiring that:
(3) When any child is adjudicated by a court to be dependent, the court shall determine the appropriate placement for the child as follows: ...
(b) If there is a parent with whom the child was not residing at the time the events or conditions arose that brought the child within the jurisdiction of the court who desires to assume custody of the child, the court shall place the child with that parent upon completion of a home study, unless the court finds that such placement would endanger the safety, well-being, or physical, mental, or emotional health of the child. Any party with knowledge of the facts may present to the court evidence regarding whether the placement will endanger the safety, well-being, or physical, mental, or emotional health of the child.
This statute requires the court to place a dependent child with a nonoffending parent who desires to assume custody unless there is a showing that the child would be endangered by such placement. Further, the best interest standard does not apply. See L.P. v. Dep’t of Children & Families, 871 So.2d 306, 308 (Fla. 1st DCA 2004) (stating that “in the absence of evidence of endangerment, the non-offending parent is entitled to custody”); D.S. v. Dep’t of Children & Families, 832 So.2d 838, 839 (Fla. 5th DCA 2002) (same); B.C. v. Dep’t of Children & Families, 864 So.2d 486, 491 (Fla. 5th DCA 2004) (“The non-offending parent’s presumptive right to custody is mandatory and- not subject to a separate determination of the child’s best interests.”); M.M. v. Dep’t of Children & Families, 777 So.2d 1209, 1212 (Fla. 5th DCA 2001) (“[t]he statute does not permit an independent judicial consideration of the ‘best interests’ of the child.”).
In this case, a home study of the Father’s residence in New York was conducted pursuant to a request made under the ICPC. In its placement order, the trial court found “that the ICPC Home Study on [the Father] was not approved by the State of New York.” We are unable to find any evidence in the record to support this finding. In fact, the evidence is to the contrary. As previously noted, the results of the home study were positive. Perhaps the trial court concluded that the home study was not approved because the SCC caseworker recommended that placement with the Father be held in abeyance pending further information on the Father’s girlfriend. In any event, the trial court was presented with a completed home study on the Father and was, therefore, required to place the child with the Father unless it made findings that “such placement would endanger the safety, well-being, or physical, mental, or emotional health of the child.” See 39.521(3)(b). The trial court’s erroneous conclusion that the ICPC home study was not approved led to a second erroneous conclusion that the Father was not entitled to custody of his child. These erroneous conclusions resulted in the court’s failure to address the issue of whether placement with the nonof-fending Father would endanger his child, as required by the statute. In the absence of evidence that such placement would endanger the child, the Father is entitled to *1220 custody of his child. Because the court failed to consider whether placement with the Father would endanger his child and, therefore, failed to set forth the findings required to justify denying the Father’s request for custody, we reverse and remand for reconsideration in accordance with the requirements of section 39.521(3)(b).
Reversed and remanded for further proceedings.
SALCINES and SILBERMAN, JJ„ Concur.

. The order on appeal was entered in the interests of two children, both of whom have the initials K.M. The appellant, T.W., is the Father of only one of the children. The identity of the other child's father is unknown.

. There are three appellees: the Department of Children and Families, the GAL, and T.M. (the Mother). The GAL and the Mother, but not the Department, each filed an answer brief in response to the Father's initial brief. By notice, the Department adopted the GAL’s brief.

. T.W. was identified as the Father of K.M. as early as the shelter petition. The dependency petition alleged that the Father was not named on K.M.'s birth certifícate. The Father was living in New York and had appar *1217 ently not been involved in K.M.’s life until after the dependency process got under way.

. The caseworker who conducted the home study reported: "This caseworker feels that the home of [the Father] is suitable for visitation/custody with his daughter. She would have her own bedroom and [the Father] has adequate means to care for his daughter. He also has medical insurance for her....”

. The Father also challenges the visitation provisions of the trial court’s order. We agree that it was an abuse of discretion to grant the grandmother sole control over the Father’s visitation rights because the order essentially fails to grant any visitation rights to the Father. Because we are reversing the placement order, we do not address this issue further.